UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RICHARD COLEMAN, SR.**                                                      **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 4:09-CV-00168-CWR-FKB**

**CMH HOMES, INC.**                                                          **DEFENDANT**

<u>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**</u>

The above-styled matter is before the Court on CMH Homes, Inc.'s Motion for Summary Judgment [39]. Having considered the memoranda and accompanying exhibits, the Court finds that the motion must be denied.

**FACTS**

Richard Coleman (hereinafter "Coleman") is an African American and a former employee of CMH Homes, Inc. (hereinafter "CMH"), in Lauderdale County, Mississippi. CMH hired Coleman in May 2006 as a salesman of manufactured and modular homes, and he served in that role until his termination on March 30, 2007. For a period of time, he was the staff's top-performing salesman, although prior to his firing, Coleman had been the subject of several complaints from customers.

The motivations underlying those complaints, as well as the details of perhaps every other relevant episode during Coleman's tenure, are in dispute.

According to Coleman, his troubles began in 2006, when CMH hired Terry Cleveland, who is white, as its service manager. Plaintiff's Brief in Opposition [44] at 2. Cleveland is, in Coleman's view, a racist who regularly used crude epithets to describe African-American customers and co-workers. Br. in Opp. at 3-4. For example, Coleman testified at a deposition

1

that Cleveland referred to an interracial couple as one resulting in "half-breed young'uns or something like that." Exhibit A to Br. in Opp. (Deposition of Richard Coleman) at 13 [45-1]. One of Coleman's former co-workers testified that Cleveland "used the 'N' word quite often" in reference to Coleman. Exhibit F to Br. in Opp. at 4-5 (Deposition of Tesia Bloebaum) [45-6]. According to another former colleague, "[o]n several occasions, Terry Cleveland would make statements like 'one down and one to go,' referring to Mr. Richard Coleman, 'cause she . . . already put enough heat on [Coleman's former spouse] that she already quit. . . . After Mr. Richard Coleman left, . . . [Cleveland] would say, 'I like it when a plan comes together.'" Exhibit G to Br. in Opp. at 3 (Deposition of David Bloebaum) [45-7]. That same colleague attested to the EEOC that "Terry Cleveland always made racial remarks referring to [Coleman and his former spouse] as <u>Niggers</u>" (emphasis in original), "would refer to Richard Coleman and [another colleague] as black Sons-of-a-Bitches[,]" and "talked about [an African-American co-worker]'s wife as a Nigger lover . . . ." Exhibit H to Br. in Opp. at 1 (Bloebaums' Statement to EEOC) [45-8]. On one occasion, according to Coleman's evidence, the company held a sales promotion, and "Cleveland referred to the event as a nigger picnic making a statement saying 'All radio stations that was broadcasting for our summer sale was only going to bring in more chicken and watermelon eaters because they had choose nothing but nigger station to broadcast the sale . . . ." Exhibit H to Br. in Opp. at 2.

Coleman avers that Cleveland's views were brought to the attention of CMH regional manager John Phillips, who insisted that he would address the issue but never did. Br. in Opp. at 4. See also Exhibit H to Br. in Opp. at 2.

Coleman's troubles multiplied, he claims, upon his election to the local NAACP

2

chapter's presidency. Coleman avers that Cleveland described the organization as equivalent to the Ku Klux Klan, Exhibit A to Br. in Opp. at 28, and that Milton Griffin, who is white and the general manager at CMH, talked to Cleveland about "putting a stop to all that NAACP [expletive]." Br. in Opp. at 4.

Shortly after CMH hired Griffin in January 2007, Coleman says that CMH, by and through his white co-workers, began conspiring "to create a paper trail so it could fire Coleman." Br. in Opp. at 6. Specifically, Coleman claims that Griffin and Cleveland approached customers to make unfounded complaints against Coleman. Br. in Opp. at 6-8.

Ultimately, by the end of March 2007, Phillips had decided to terminate Coleman on the basis of these complaints. "However," Coleman claims, "it is clear that the white manager, Griffin, and his white accomplices . . . solicited these complaints, and perhaps even made up and wrote some of the complaints themselves." Br. in Opp. at 9. Coleman apparently bases this argument on Cleveland's "plan" that continued to "come together" with each black employee's dismissal. See Exhibit G to Br. in Opp. at 3. CMH eventually replaced Coleman with a white employee. Br. in Opp. at 9.

For its part, CMH denies that racism drove the decision to fire Coleman. CMH points out that Coleman himself testified at his deposition that he "ha[d] no problem" with Phillips, who made the final decision regarding the termination. Exhibit B to Defendant's Memorandum [41-2] at 23 (Deposition of Richard Coleman). CMH claims that Coleman never complained to Phillips of racism in the workplace. Def. Memo at 3. Moreover, CMH insists that it was not its agents but, in truth, Coleman himself who uttered race-based insults in the workplace. Def. Memo at 3.

**ANALYSIS**

Coleman seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and under Title 42, United States Code, Section 1981. Such claims for workplace discrimination are governed by the "modified *McDonnell Douglas* approach" employed by the Fifth Circuit. See *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 475 n.3 (5th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This inquiry first requires a plaintiff to demonstrate a *prima facie* case of racial discrimination. The burden then shifts to the defendant, who must offer a legitimate nondiscriminatory reason for the adverse employment action. If such evidence is submitted, then the burden returns finally to the plaintiff, who must prove that the rationale offered by the defendant is either pretextual or only a portion of the defendant's motive. *Bryant*, 413 F.3d at 471 n.3.

Like any other civil action, Coleman's suit is subject to the demands of Rule 56 of the Federal Rules of Civil Procedure. Upon reception of a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (reciting standard of review for summary-judgment motions).

Although such motions are common, the grants thereof should not be. "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989). Moreover, the Fifth Circuit has held that such caution is warranted particularly in the realm of Title VII claims because,

> [i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and

4

> intent. Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder.

*Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985).

In the case at bar, Coleman must initiate his Title VII and Section 1981 claims by making out a *prima facie* case of racial discrimination. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). In order to eclipse this threshold by a margin sufficient to survive CMH's motion, Coleman must offer evidence sufficient to permit a reasonable jury to find that Coleman (1.) is a member of a protected class, (2.) was qualified for the position that he held, (3.) suffered an adverse employment action, and (4.) was treated less favorably than others similarly situated but outside the class. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005).

Coleman has met this burden. First, Coleman has produced evidence sufficient to demonstrate that he is a member of a protected class, namely, that he is an African American. Second, by demonstrating that CMH hired him in the first place, the evidence supports Coleman's claim that he was qualified for the position he held. Third, Coleman's evidence supports his argument that he suffered an adverse employment action by virtue of his termination. And fourth, a jury could find reasonably that others similarly situated to Coleman but outside his protected class were treated more favorably because Coleman's replacement was white.

The second step in a workplace-discrimination claim is to evaluate whether the employer can offer "a legitimate nondiscriminatory reason for the adverse employment action." *Keelan*, 407 F.3d at 341. As Coleman concedes, CMH's contention that it fired Coleman because of legitimate customer complaints satisfies this obligation. See Br. in Opp. at 15.

5

Therefore, the burden rests with Coleman to highlight evidence that would support a reasonable jury's determination "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. (mixed-motives alternative)." *Keelan*, 407 F.3d at 341.

Coleman has offered such evidence. Coleman avers that the customer complaints defended by CMH as legitimate are, instead, the product of a conspiracy among white co-workers hostile to him because of the color of his skin. Br. in Opp. at 9. As proof, Coleman points to a series of would-be customers inspired to complain, in his view, by his co-workers because he had turned the aspiring homeowners down for reasons related to their credit. Another complaint, according to Coleman's replacement, was generated when Cleveland and another of Coleman's co-workers "w[ere] getting this guy to come down there, . . . to come down there and fill out a statement against [Coleman]." Br. in Opp. at 8. Another of Coleman's co-workers, Greg Walker, also recalled a customer having been asked by Cleveland and Griffin to write a complaint against Coleman. Br. in Opp. at 8.

Whether a jury will be convinced by this evidence is, of course, another question altogether and one not now before the Court. However, it undoubtedly creates a genuine issue of material fact, and therefore, Coleman is entitled to proceed to trial with his claim.

CMH argues in its motion for summary judgment that it is entitled to an inference of nondiscriminatory intent because Phillips, as the "same actor" to hire and fire Coleman, would not have hired Coleman in the first place if he harbored ill feelings toward all African Americans. See *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996). While such

6

evidence entitles an employer to an inference of nondiscriminatory intent, "the same actor inference does not rule out the possibility that an individual could prove a case of discrimination." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 n.16 (5th Cir. 2000) (quotations omitted). In the case at bar, Coleman has offered evidence sufficient to rebut the "same actor" inference, including Phillips' knowledge and implicit validation of Cleveland's racially-charged outbursts. See Exhibit H to Br. in Opp. at 2. Ultimately, Phillips' motivation for firing Coleman remains unclear, and as such, the question is one properly reserved for determination by a jury.

## CONCLUSION

Coleman has offered evidence sufficient to create a genuine issue of material fact on the question of workplace discrimination under Title VII and Section 1981. Therefore, the motion for summary judgment of CMH Homes, Inc., is denied.

SO ORDERED this 20th day of January 2011,

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge